UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
TERESA STUKES,                                          :      **<u>MEMORANDUM</u>**
                   Plaintiff,                 :      **<u>DECISION AND ORDER</u>**
:
       - against -                                     :      17-cv-2874 (BMC)
:
COMMISSIONER OF SOCIAL SECURITY,      :
:
                   Defendant.                :
------------------------------------------------------------ X

**COGAN**, District Judge.

       Plaintiff *pro se* seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she is not disabled for the purpose of receiving supplemental security income benefits. The ALJ found that she had a variety of ailments which, although not necessarily individually "severe" for purposes of step two of the five-step sequential analysis, were severe when viewed in combination. These consisted of diabetes, disc disease, asthma, alcohol-induced anemia, high blood pressure, history of seizures, history of pancreatitis, major depressive disorder, a left knee disorder, history of regurgitation of two elements in her heart. Despite these impairments, the ALJ found that she had sufficient residual functional capacity to do light work (with task, environmental, and personal interaction restrictions), and the opinion of a testifying vocational expert confirmed that there are such positions in the national economy to accommodate her restricted residual functional capacity.

       The Commissioner has moved for judgment on the pleadings. Plaintiff did not submit an opposition, but nevertheless, in light of her *pro se* status, I have reviewed the record to determine if the ALJ's determination is supported by substantial evidence and if the ALJ made any legal errors.

The only colorable issue, which the Commissioner properly identifies in her motion, is whether the ALJ appropriately discounted the opinions of plaintiff's treating internist, Dr. Joseph Charles, and her treating psychiatrist, Dr. Bertholet Desir. (The ALJ referred to Dr. Desir as a woman, but I think the Commissioner has properly referred to him as a man.)

The opinion of a treating physician often receives more weight than another physician's because he or she can "provide a detailed, longitudinal picture" of medical impairments, as opposed to providing an opinion obtained from "the objective medical findings alone or from reports of individual examinations, such as consultative examinations." 20 C.F.R. § 404.1527(c)(2). The opinion of a treating physician "on the nature or severity of a claimant's impairments is binding" on the Commissioner as long as the opinion is "supported by medical evidence and not contradicted by substantial evidence in the record," as set forth in 20 C.F.R. § 404.1527(c)(2). Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 861 (2d Cir. 1990) (stating that under the treating-physician rule, a treating physician's opinion is entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians).

Where the Commissioner decides to override the opinion of the treating physician, she "must explicitly consider, *inter alia*: (1) the [frequency], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian, 708 F.3d at 418 (citing Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)). When the Commissioner does not give the treating physician's opinion controlling weight, she must "always give good reasons" for the weight she applies instead. 20 C.F.R. § 404.1527(c)(2).

Dr. Charles's conclusions, if accepted at face value, would leave little question that plaintiff was disabled. The checklist form showed plaintiff incapable of doing very much at all, but the ALJ gave this opinion only "partial but very limits [*sic*] weight." He discounted Dr. Charles's opinion because (1) Dr. Charles is not a specialist in any of the areas of plaintiff's maladies; (2) his examinations showed no significant findings that could substantiate his restrictive residual functional capacity assessment; (3) his examinations were superficial; (4) his findings in his treatment notes were mostly normal or showed minimal impairment, including no neurological deficits; and (5) his treatment notes did not mention plaintiff needing an assistive device, nor mention plaintiff complaining significantly about pain.

The record supports the ALJ's weighing of Dr. Charles's opinion. There seems to be little to no evidence of plaintiff having back or knee pain before she was hit by a car in March 2014, and although plaintiff was referred to physical therapy and other conservative forms of treatment after the accident, she apparently pursued these little or not at all because there is no evidence in the record. Although Dr. Charles's notes from June 2013 reflect that plaintiff used a walker and a cane in March and April 2013, the notes do not mention spine or back pain, only pain on the bottoms of her feet or the balls of her feet. The MRIs, taken in June 2014, were essentially normal, although plaintiff has some mild spinal degeneration (disc bulge in the lumbar spine and disc desiccation and bulge in the cervical spine) and bursitis in her right knee. Her consultative examination with Dr. Vinod Thukral was essentially normal – plaintiff's gait was normal, she could walk on her heels and toes without difficulty and without an assistive device, she could do a full squat, and she did not need help changing for the exam, getting on or off the exam table, or rising from the chair despite her "moderate tenderness in the lumbar spine

on movement." Dr. Thukral's notes also show that plaintiff's straight-leg test was negative and that she had full range of motion in her hips, knees, and ankles.

Plaintiff's other, non-neurological ailments must be viewed in light of her history of alcohol abuse and seizures. (Plaintiff's application and her testimony were inconsistent on this and other points, but it appears that she did not have any seizures for one to two years before she filed her application.) Most of her few hospital visits – the bulk of which happened before her alleged onset date – were either for alcohol poisoning, chronic conditions from long-term alcohol abuse, or the car accident.

I therefore find that the ALJ acted appropriately in giving limited weight to Dr. Charles's opinion. It was an outlier compared to the other evidence in the record, including his own treatment notes.

With regard to her psychiatric treating physician, Dr. Desir diagnosed plaintiff as having major depression, alcohol and marijuana abuse, and multiple alcohol detoxes. Dr. Desir treated plaintiff for approximately 18 months. His examination notes show a Global Assessment of Functioning Score which indicated moderate symptoms or impairments, but are otherwise unremarkable, that is, they essentially show plaintiff as fully functioning. So do most of Dr. Desir's answers on the first disability questionnaire, which he completed in January 2015. But, based on his answers the questionnaire, he found that plaintiff had marked limitations in understanding and remembering instructions, carrying out detailed instructions, interacting with supervisors and co-workers, and responding to workplace pressures. Dr. Desir's findings were basically the same in the second questionnaire (completed December 2015) although his answers noted that plaintiff was "easily irritable and argumentative." The ALJ gave Dr. Desir's

conclusions "little weight" because they were inconsistent with all of Dr. Desir's treatment notes and specific findings, which were essentially normal.

I cannot disagree with the ALJ on this point, especially considering that the "marked" limitations found by Dr. Desir contradicted some of plaintiff's self-reporting. His conclusions also contradicted plaintiff's reporting in the two consultative evaluations by psychologist Dr. Ashley Knoll (a/k/a Dr. Dolan) in July 2014 and September 2015, in which plaintiff described herself having "a couple of friends" and good relationships with family members. Dr. Knoll found no limitations in plaintiff's ability to function, even though she found moderate impairments, and because of this inconsistency, the ALJ gave Dr. Knoll's opinion partial weight.

If I were reviewing the ALJ's findings *de novo*, I would conclude that Dr. Desir was right that plaintiff has marked limitations in understanding and executing complex instructions, but I see at most moderate and probably limited, if any, impairment in getting along with people. I cannot fault the ALJ for concluding that Dr. Desir overstated plaintiff's functional impairments. His findings were almost overwhelmingly typical of a simple, but normal, mental state. His finding of marked limitations in getting along with people was based wholly on plaintiff's self-reporting, but he may not have been aware that at other times, she reported no problem at all. He also felt it important that she had not worked in decades, but that is not quite accurate: she had worked for a couple of years, and had only stopped due to seizures, not depression. The main point that emerges from the objective evidence of physical condition (the MRIs) and from plaintiff's physicians' treating notes is that plaintiff had no significant problems performing her activities of daily living.

I therefore conclude that the ALJ properly discounted the opinions of plaintiff's treating physicians. They were unsupported and contradicted by other substantial evidence in the record.

The Commissioner has raised other issues, namely: (1) whether the ALJ gave proper weight to plaintiff's subjective complaints; (2) whether the vocational expert's testimony was sufficient for the ALJ to conclude that there are jobs that plaintiff could perform with her restricted functional capacity in the national economy; and (3) whether evidence submitted to the Appeals Council should have resulted in a remand to the ALJ. None of these potential issues are substantial and I see no need to discuss them.

Defendant's motion for judgment on the pleadings is granted. The Clerk is directed to enter judgment, dismissing the complaint.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
December 22, 2017